Good afternoon. The clerk informs us that as far as the day calendar is concerned and the motions that we have, that council have signed in, everything is in order, so we'll dispense with the call of the calendars. We'll turn to the motions calendar, the first two cases of which are on submission, and then we'll turn to Mr. Jackson. Thank you very much, your honor. I'd like to respectfully request two minutes of time for rebuttal. Thank you. Now, may it please the court, if a court determines that a defendant poses a risk of flight, the Bail Reform Act asks only one question, and that is, are there any conditions that could be set that would reasonably assure the defendant's presence? Now, after the initial appeal in this case, this court gave the authority to go back to the district court to propose conditions that have been discussed in the circuit here and present them to the district court with specific instructions that the district court was to follow the law as set out by this court's president in sub 90, which required the court to hold the government to its burden of proving that there were no conditions, no conditions whatsoever that could be set that would reasonably assure the defendant's presence. It didn't go quite that far, did it? I mean, we can all imagine things that will reasonably assure somebody's presence, like, yeah, you can be out on, well, it's shackled to a tree, and you can be out not on bail, but you're going to be present. Well, I mean, there's some crazy things that can be done, but what's our standard of review here? I mean, this is a fact finding, right? No, your honor, and I think that's a point where the government's brief . . . At some point, it's a fact finding. I think there's a fact . . . I listen to the facts, and I say, if I'm the trial judge, and I say, I'm listening to all of this, and based on this, the evidence is in equipoise, and I'm concerned that if I say you are free on bond, and you can be subject to surveillance by, and supervision by, armed guards whom you have I've got to let you go? No, your honor, let me respond to that in two points. First, the standard of review as described in the government's brief is just wrong. This court's decisions, if you read the entirety of what is said in both of the decisions that the government cites in this brief, where it suggests that clear error is the review, they both say that once you get past the pure factual findings, and you get to the question of law that is at the heart of our determination, it's essentially de novo review. This is a question of whether or not, looking at the facts, and there's not huge disagreement here about the facts, the question is, looking at those facts, whether, as a matter of law, it can be determined that the government has met its burden of showing that there are no conditions that could reasonably assure the defendant's presence. Now, your honor, you make a good point in terms of being tied to a tree or something like that. I think that's where the statute importantly provides for reasonably assure. And right here, as was much of the discussion in the Second Circuit when we came here last time, it has to be the case that private security is a reasonable solution for two reasons. One, it's utilized over and over and over again in the circuit, including on many occasions where the government has every defendant was released, even though they were foreigners, with substantial ties overseas and substantial resources, but they were all released, several of them with private security solutions, and it has literally never failed. So we're not talking about the situation where something is being proposed that's at the far extreme, like tying someone to a stump. We're talking about right within the heartland of not only what happens regularly in this court, but also what the Bail Reform Act specifically provides for. I mean, the very first condition that is enumerated as a condition that a court should consider under the Bail Reform Act is released to a third party who will be answerable to the court, and that's exactly what we're talking about here when we talk about this condition. Now, Mr. Jackson, this is a body of law which is relatively new, this is a body of law which is relatively new, and I'm wondering if you can give us a sense of the intricacies of their private means. I was on the panel that first adopted this arrangement, and is it not the case that this has created a two-tier system for bail, where people who have the means to provide for get bail and live comfortably, while those under private guard, and yet those with fewer means have to be detained? Judge Cabranes, you raise what is, I think, one of the most important questions in this, and I would submit to you that the answer is no. This is not creating a two-tiered system for the exact reasons that this court set out in the Esposito decision. Now, we talk a little bit about Esposito, but that was a case that involved a person unlike Mr. Bustani at all, a person who had been involved in very complex, violent crimes, the head of a criminal organization, a mafia boss, and what this court said is that basically where the defendant's wealth is the primary factor that the government is relying on in order to argue that they are such a risk of flight, that they can't be released. It is fundamentally unfair and offensive to, I think, our fundamental notions of how a man presumed innocent should be treated, to not allow him to utilize that wealth in order to create a condition that will allow him to adequately defend himself. And I would just submit, Your Honor... So are we, is the court, writ large, precluded from inferring what seems to me a fairly logical inference that somebody with a million dollars in the bank is far more able to get to Cuba than somebody with $5,000 in the bank? Not at all, Your Honor, and I think... Why then, what's the distinction? A million versus $5,000. Isn't that a wealth factor that says if somebody's got a lot of money and has the ability to travel internationally, that's something the court needs to be concerned about in order to ensure that person's continuing presence at court proceedings? Yes, Your Honor, you hit it right on the head. That is a critical factor that the court can and should take into account in terms of the first prong of the determination of the Bail Reform Act. Whether the defendant is a risk of flight. The defendant who has a million dollars is much more of a risk of flight. But the second prong is what we're focused in on today. And that is whether or not there are any conditions that could be set that would reasonably assure the defendant's presence. We're talking about a man who's facing a case with millions of pages of discovery. He's going to be able to see his lawyers for no more than a couple of hours a day while he's dealing with the fight of his life. We submit that the Bail Reform Act was set up in order to make a situation where a defendant has that opportunity to defend himself in a way that's fair. You've reserved two minutes, and I've given you some extra time. I appreciate you, Your Honor. Thank you. You've reserved two minutes. Thank you. May it please the Court. Mark Beeney for the United States. I represent the United States in the district court. Your Honors, the government requests that this court affirm the district court's decision because it was not clear error. And I would note to Judge Hall's questions, that is the standard here because this is a uniquely factual determination because we're concerned with whether there's a set of conditions that could reasonably assure the defendant's appearance. The district court did not clearly err in finding that no combination of conditions could reasonably assure the appearance of this defendant where the record shows, first, the defendant faces a great deal of evidence of guilt and if convicted, a likely very lengthy prison sentence. Second, has access to vast financial resources. Third, has demonstrated expertise in both bribing government officials and high-level bank officials and procuring fraudulent legal documents for entry to a foreign jurisdiction. And fourth, no attachment to the United States other than in connection with this fraud scheme and lives and works in countries that do not extradite to the United States. Did Judge Kuntz make findings on all of these things that you're bringing to our attention? Yes, Your Honor. He issued an 18-page written decision finding that the defendant was at flight risk by preponderance, which I think is unchallenged at this point, and that no set of conditions could reasonably assure his appearance. It went up to this court, and at that time, the Second Circuit affirmed and sent it back down and gave the defendant the ability to file a renewed bail application. But when he did so, Your Honors, it became clear that the bail application was even weaker than it first appeared. The big difference between the first and the second bail application is that the defendant now says that he will put up $9 million rather than $1 million as collateral for his bail. However, for the first time, the government got to see the pretrial services report. And in the pretrial services report, the defendant frankly admitted that he makes $84,000 a year from PrivenVest. But yet five years ago, he gave approximately $8 million to his father. He gifted it to him to hold for him. Why wasn't the pretrial services report available in the first go-around? Or was it a supplemental that was done in connection with the application? Your Honor, it was written after the judge heard oral argument the first time. He referred to it in his decision, but the government had not seen it. However, when it got sent back down, we did have a chance to review it. And he indicated he made $84,000 a year, and yet he had approximately $12 million in assets. And as I said, $8 million apparently was gifted to his father five years ago. Well, as we set out in the indictment, and this is paragraph 92 of our indictment, the defendant received approximately $15 million from this fraud scheme five years ago. So we put that in our papers with respect to the amended bail application. And that was the focus of our argument with respect to his amended bail application. And the district court, in considering this, very reasonably found that this was no assurance that the defendant would appear. And in this, I would note that the first time that we argued this case, Judge Raggi raised issue, saying in reading the judge's decision and the proceedings below, that, and this is at page 17 through 19 of the transcript that is attached as Exhibit E to the defendant's papers. She noted that if I read this correctly, whether the monies were traceable to the alleged crime, and in that respect, your client might very well rather risk the profits of the crime than his liberty. I'm not saying that that's this court's finding, but I think that's the reasoning of the judge. And when we appeared before Judge Kuntz with respect to this amended bail package, he went specifically to that, speaking to the moral suasion. Those were the government's arguments that this, in fact, would not keep him here. I would also note, for your honors, that defense counsel relies on 12 cases that they say have been successful involving private jails. However, those cases are much different than this case. Many of them involve United States citizens with long ties to the community. For example, Judge Cabranes, you were on the Subnani panel, and in that case, the defendants were naturalized United States citizens who had been here more than 25 years. So a much different factual setting. That's the opinion of Judge Raji in that case is, as it were, the font of all of the later cases. Is that right? Yes, your honor. And I should note, in that case as well, the government did not, had at some point, had conceded that a private jail would be sufficient in the circumstances of that case. And that is not the case here. The other cases involving foreign defendants that were released to private jail are the FIFA cases, the defendant sites. However, in all of those cases, the government, in its estimation of those particular defendants, applying the 3142G factors, thought that they were capable of release under those circumstances. That is not the case here. This is not like Subnani, and it's not like the FIFA cases. The government has consistently argued against the defendant's release because of the extreme flight risk. The remaining case, which the defendant points to, is the Enlap-Seng case from the Southern District of New York, where the defendant was released to private jailers over the government's objection. And while that case, the defendant did appear for court, I would note that the record indicates that that defendant, who was a 67-year-old billionaire, had many opportunities to flee. And that's what the government is concerned with here and has pointed to at the district court level and would raise to your honor. The Southern District noted that the defendant in the Enlap-Seng case was outside of his apartment virtually all day, every weekday, was visited by a masseuse for a total of 160 hours, and went on an unauthorized visit to a restaurant in Chinatown with his private guards in tow. An FBI employee happened to be at that restaurant in Chinatown and took a picture of the defendant out and then reported it, and that's how it was reported to the court. While the defendant was not put in custody after that and did report to court, it points to the opportunities to flee. And while the 67-year-old Enlap-Seng didn't flee, this underscores exactly how Bustani, who was only 40 years old, could flee. At any time he was out of his guarded apartment would be an opportunity for flight. Any time he's at his attorney's law offices that obviously are not set up the way the MDC or the MCC is, they're not designed for prisoners to be there, would be an opportunity to flee. And he could flee aided by his co-conspirators at PrivInvest, by private plane or by private boat, because he has access to the vast financial resources, including the $15 million from this fraud scheme that he's received, but also to the resources of the billionaire who's an unindicted co-conspirator and the principal of the company, cited in paragraph 13 of our indictment. Let me ask you this. Yes, Your Honor. Your adversary raises, on behalf of his client, issues regarding review of discovery and the massive amount of discovery that's going to be involved in this case. Does the government have a mechanism for making arrangements that essentially enable that in some way that's fair to the defendant? The government would take any steps necessary to further facilitate his review, if necessary, at the MDC of any documents they wish to review with the defendant. Does the government have that ability? And I'm not questioning your bona fides, but sometimes, I know from experience, it's tough to ask the Bureau of Prisons to do certain things and have them respond positively. Certainly. Your Honor, I don't know that standing here today what their present abilities. I know that there is access to both the attorney meeting room and also to lap or computers while at the MDC. But I would note that the government would stand willing to do whatever we could to seek to facilitate his review of discovery in the case. I would note also that the government met with the defense attorneys at the very outset of the case and gave a high-level overview of the evidence and has produced virtually all of the discovery already, so hopefully to aid the defendant to prepare for trial. Your Honors, for all of the reasons that the government has set out, the government submits that the district court's decision was not clear error. It was not error at all and should be affirmed because the government has shown by preponderance of the evidence that the defendant is a flight risk and that no set of conditions would reasonably assure his appearance here. Mr. Jackson, you have two minutes. Thank you, Your Honor. To your last question, Your Honor, the answer to that question is no. There is no way to recreate what Mr. Bustani would be able to do in terms of defending himself in this case if he is on bail in the MDC. Right now, he's situated far away in Brooklyn. This case involves allegations that involve Europe, the Middle East, Africa. We plan to be meeting with witnesses who are potentially overseas. If Mr. Bustani's on bail, he can participate in some of those discussions with potential experts, potential witnesses through video conference. He can't do any of that in jail. There's a very serious limit on the amount of discovery. We can't bring millions of pages into the jail, and so our ability to work with Mr. Bustani is severely limited. Now, I just want to underscore the notion that first the prosecutor noted that the Southern District had suggested in the Singh case that the defendant in that case posed any number of problems. That was what the prosecutor said. What the district court did in the Singh case, he's quoting the prosecutor's language in a brief that was ultimately rejected by the district court in that case. The district court said no when the government repeatedly attempted to put Mr. Singh in. All that happened is he stopped to get some Chinese food on one day back from the court. He reported, as he was required, as every single defendant who's been released under conditions with private security has been released, has reported. There has never been a single failure. And I would just underscore, Your Honor, also this notion that Mr. Bustani received $15 million from the fraud scheme is false. Mr. Bustani never hid from pretrial services. I was there for the interview. He described his regular salary as being $84,000 and admitted that he had gotten bonuses. Because of the nature of his position, those bonuses were millions of dollars. He never hid his assets. He described them openly to pretrial. We described them in the district court. And it's been clear from the beginning that Mr. Bustani is like any employee of a company that is a legitimate company. He's attempting to use his earnings in order to post bail. We respectfully request that Your Honors allow Mr. Bustani to be released pursuant to the extraordinarily strict conditions we proposed. Thanks very much, Mr. Jackson. Thank you, Your Honor. We reserve the decision. You'll hear from us in due course. Thank you both for a well-argued motion.